UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RIMAS ENTERTAINMENT, LLC,

                          Plaintiff,

        - against -                                          Case No.

RSM PUBLISHING, LLC and RISAMAR
BUSINESS GROUP, LLC,                                         <u>JURY TRIAL DEMANDED</u>

                          Defendants.

<u>**COMPLAINT**</u>

Plaintiff Rimas Entertainment, LLC ("Rimas Entertainment"), for its Complaint against

defendants RSM Publishing, LLC and Risamar Business Group, LLC, alleges as follows:

<u>**Introduction**</u>

1.      This is a case about trademark piracy, brought because Rimas Entertainment's

former controlling owner, Defendant Risamar Business Group, LLC ("Risamar"), its principal,

Ricardo Jiménez Dan ("Jiménez"), and the music publishing company they control, Defendant

RSM Publishing, LLC ("RSM"), are wrongfully using valuable trademarks owned by Rimas

Entertainment, which they gave up the right to use when they exited Rimas Entertainment.

Because Defendants, both under the control of Jiménez, are brazenly misappropriating Rimas

Entertainment's trademarks to enrich themselves and perpetuate a false connection with Rimas

Entertainment, Rimas Entertainment finds itself with no reasonable alternative other than to

initiate this proceeding.

2.      Rimas Entertainment is an extraordinarily successful record label with an

internationally renowned roster of prominent artists who have had a profound impact not just on

music, but worldwide popular culture.  From its inception in approximately 2014, Rimas Entertainment's prestige, success and enormous goodwill have been embodied in its RIMAS trademark or variations thereof, as well as various Rimas Entertainment-related logos and designs (collectively, the "RIMAS Marks").  Rimas Entertainment has used its RIMAS Marks in U.S. commerce consistently since 2014, from and after the time of its founding.

3.      Shortly after Rimas Entertainment was established, and as is common in the music industry, a separate music publishing company, Defendant RSM, was established.  Unlike a record label, which primarily owns and exploits the copyrights in recorded music, a music publisher primarily exploits musical compositions (*i.e.* the music and lyrics that, when recorded, become what is popularly known as a "record") to third parties like film studios, television producers, advertising agencies and others.  From the time of RSM's founding, through February 2023, Defendant Risamar, a company controlled by Jiménez, owned a majority interest in RSM, just as it owned a majority interest in Rimas Entertainment.  The minority owners of the two companies were also the same during this period.

4.      For the period of time during which Rimas Entertainment and RSM were commonly owned and controlled, Rimas Entertainment, the first user and owner of the RIMAS Marks, allowed RSM to use the designation "Rimas Publishing," as well as certain Rimas Entertainment-owned logos and designs, for its music publishing business pursuant to an implied license.  Jiménez, who imperiously controlled both Rimas Entertainment and RSM at that time, dictated the quality of the services offered by both companies, which shared offices, personnel and resources. Rimas Entertainment, under the direction and oversight of Jiménez, at all times maintained and exercised its right to control RSM's use of the RIMAS Marks.

5.      On or about February 9, 2023, Jiménez and Risamar decided to sell their interests in Rimas Entertainment to Orchard Enterprises, NY, Inc. ("Orchard"), an indirect subsidiary of Sony Music Entertainment, by entering into a Membership Interest Purchase Agreement (the "MIPA"), with other parties.  Orchard paid substantial consideration to acquire these interests in Rimas Entertainment as part of this transaction (the "2023 Transaction").  The RIMAS Marks were among the assets of Rimas Entertainment for which this substantial consideration was paid. The 2023 Transaction closed on June 29, 2023.  Since that time, neither Jiménez nor Risamar have had any involvement or ownership interests in Rimas Entertainment.

6.      RSM was not part of the 2023 Transaction, and it was then and is still now, upon information and belief, majority-owned and controlled by Risamar and Jiménez.  In 2023, as part of the negotiations in respect of the 2023 Transaction, and before the MIPA was signed, Risamar approached Orchard to discuss RSM's potential future use of the RIMAS Marks in connection with its music publishing services after the closing of the 2023 Transaction.  Orchard stated that any future, post-closing use of the RIMAS Marks by RSM would require substantial monetary consideration – that is, any future, post-closing use by RSM was not a part of the bargained-for exchange between the parties in respect of the 2023 Transaction and had to be separately negotiated and paid for.  Consequently, those brief discussions did not result in any agreement extending RSM's then-right to use the RIMAS Marks, and RSM and Jiménez therefore understood that (i) effective upon the closing of the 2023 Transaction, any prior license from Rimas Entertainment to RSM in respect of RSM's use of the RIMAS Marks was revoked; and (ii) RSM's use of the RIMAS Marks in connection with its music publishing services would need to end after the 2023 Transaction closed.

7.      But Jiménez proved incapable of taking "no" for an answer.  After Jiménez learned that Orchard would not extend the license free of charge, he hatched a scheme to purloin the RIMAS Marks for himself and his companies.  Callously indifferent to Orchard's ability to enjoy the exclusive rights to the RIMAS Marks for which it had bargained, Jiménez, through his control of RSM and Risamar, secretly concocted a sham "Coexistence Agreement" between Rimas Entertainment and RSM that was signed after execution of the MIPA, but before the 2023 Transaction closed.  This sham agreement, unsupported by consideration, purported to deprive Rimas Entertainment of certain rights in the RIMAS Marks while purporting to effectively grant RSM a perpetual right to continue to use such RIMAS Marks without a license.  The only consideration purportedly provided to Rimas Entertainment under this sham agreement was the right to use the RIMAS Marks in connection with recorded music activities free and clear of any claims by RSM – a right that Rimas already had.  This bogus Coexistence Agreement, signed by Jiménez and Carlos Souffront, who, on information and belief, is a personal lawyer for Jiménez, was fraudulently procured; prohibited under the MIPA and various other agreements governing Rimas Entertainment of which Jiménez and RSM were aware; lacked consideration; and was concealed from Orchard and Rimas Entertainment's minority owners by Risamar and Jiménez.

8.      Accordingly, the Coexistence Agreement was void *ab initio* or, alternatively, rescinded by Rimas Entertainment in January 2024 promptly after Orchard and the other owners of Rimas Entertainment learned of its execution.  Also in January 2024, Rimas Entertainment issued a notice to RSM and Risamar demanding that they cease all use of the RIMAS Marks, asserting that the sham Coexistence Agreement is void, and reasserting that any and all prior authorizations to use the RIMAS Marks were no longer of any force or effect.

4

9.      Nevertheless, with gross indifference to Rimas Entertainment's rights and with the void or rescinded phony Coexistence Agreement in hand, RSM – still owned and controlled by Risamar – asserts that it continues to have rights in the RIMAS Marks for music publishing services and continues to use those Marks in a manner that has caused actual confusion in the marketplace.  RSM, directed by Risamar, has also filed applications with the U.S. Patent & Trademark Office (the "PTO") to register the designation RIMAS PUBLISHING for use in connection with music publishing services.  These RSM applications have been cited by the PTO as impediments to the registration of certain applications Rimas Entertainment has filed to register the RIMAS Marks for its own goods and services.  The grounds for those citations by the PTO are a potential likelihood of confusion between the parties' uses of RIMAS.  Indeed, RSM's use of the RIMAS Marks after Rimas Entertainment's termination and revocation of the license related thereto inevitably suggests an affiliation between Rimas Entertainment and RSM's goods or services that no longer exists.

10.     RSM continues to use the RIMAS Marks in a manner violative of Rimas Entertainment's trademark rights under U.S., Florida and Puerto Rico law.  Accordingly, Rimas Entertainment has brought this action to put an end to Defendants' blatant acts of trademark infringement, unfair competition and dilution, and to prevent ongoing harm to Rimas Entertainment's valuable trademark rights and the underlying goodwill they symbolize.

## Parties, Jurisdiction and Venue

11.     Plaintiff Rimas Entertainment is a limited liability company organized under the laws of Puerto Rico with its principal place of business at 644 Avenida Manuel Fernandez Juncos, PH, San Juan, Puerto Rico  00907.

5

12.     Upon information and belief, defendant RSM is a limited liability company organized under the laws of the State of Florida, having its principal place of business at 3350 Southwest 148th Avenue, Miramar, Florida.  RSM also does business under the name "Rimas Publishing."

13.     Upon information and belief, defendant Risamar is a limited liability company organized under the laws of the State of Florida, having its principal place of business at 4101 Northwest 124th Avenue, Coral Springs, Florida.

14.     This is a civil action arising out of Defendants' infringement of the RIMAS Marks owned and used by Rimas Entertainment, false designations of origin and false representations, and unfair competition, in violation of Section 43(a)(1)(A) of the U.S. Trademark Act of 1946, *as amended* (the "Lanham Act"), 15 U.S.C. § 1125(a)(1)(A); for trademark infringement, unfair competition, dilution, deceptive practices and breach of contract under the law of the State of Florida; for trademark infringement, false designations of origin and false representations, unfair competition, and dilution under the Puerto Rico Trademark Act, *as amended*, (the "PR Trademark Act"), P.R. Laws Ann. tit. 10, §§ 223w-z; and for declaratory relief under the U.S. Declaratory Judgment act, 28 U.S.C. §§ 2201 *et seq.*

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

16.     Upon information and belief, this Court has personal jurisdiction over Defendants by virtue of their domicile and physical location within this State, their commission of tortious conduct as described herein in the State of Florida, their transaction of business within the State of Florida, and their contracts to supply services in the State of Florida, as described herein.

17.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), because a substantial part of the acts of infringement, and other events and omissions complained of herein, occurred in this District, and this is a District in which Defendants reside or may be found.

### Rimas Entertainment and the Valuable RIMAS Marks

18.     Rimas Entertainment is a phenomenally successful record label that specializes in reggaeton and other Latin music, and that represents celebrated artists such as Bad Bunny, Eladio Carrión, and Arcángel.  Rimas Entertainment releases have topped the Spotify and Apple Music charts; achieved the No. 1 ranking on the Billboard Hot 100 and 200, as well as multiple Top 10 rankings; scored more than sixty Grammy and Billboard Music award nominations; won awards that have included label of the year in multiple categories at the Latin Billboard Awards, more than fifteen Grammys, ten Latin Billboard Music awards, and dozens of other awards from organizations such as Premios Juventud, Premios Lo Nuestro, MTV and iHeartRadio.

19.     Rimas Entertainment's releases are available digitally through all of the most widely used digital streaming services, including Spotify, Pandora and Apple Music, as well as in physical configurations.  Many of Rimas Entertainment's releases have been featured in films, television and streaming programs, video games, and advertisements for well-known brands.

20.     All of this critical and popular success has resulted in the creation of substantial goodwill among consumers and the trade in the RIMAS Marks owned by Rimas Entertainment, including but not limited to in Florida and Puerto Rico.  Indeed, Rimas Entertainment's releases have generated more than hundreds of millions of dollars in revenue since 2014.

21.     Further, over time, Rimas Entertainment has consciously sought to create an association among both consumers and the trade between the well-known artists on Rimas

Entertainment's roster and the RIMAS Marks.  Since 2014, Rimas Entertainment has spent tens of millions of dollars advertising both its artists and their releases, as well as its own services, under the RIMAS Marks.  Rimas Entertainment uses the RIMAS Marks to promote both the company, as well as its artists and releases, across all major social media channels, including through a YouTube channel called RIMAS MUSIC that has more than 2.2 million subscribers, and an Instagram account operated under the handle RIMAS with more than 275,000 followers. True and correct copies of examples of social media posts showing use of the RIMAS Marks are attached as Exhibit 1.

22.    Rimas Entertainment has regularly used "RIMAS" in a stylized font with a red triangle representing a "play" button instead of a dot in the letter "i."  A depiction of this prominent RIMAS Mark appears below.



23.    Rimas Entertainment owns the entire right, title, and interest in and to the inherently distinctive RIMAS Marks and owns, *inter alia*, a series of applications to register such marks filed with the PTO that cover a wide range of music-related goods and services.  As a consequence of all of the foregoing investments of time and resources, the consuming public and trade in the U.S., including but not limited to both in Florida and Puerto Rico, have come to recognize and do recognize the inherently distinctive RIMAS Marks, as used in connection with music-related goods and services, as being owned exclusively by Rimas Entertainment, and to identify and associate said Marks with Rimas Entertainment.  Rimas Entertainment derives

substantial goodwill and value from the aforesaid recognition, association and identification by the consuming public and trade.

### Defendants' Ongoing and
### Unauthorized Use of the RIMAS Marks

24.     The goods and services of a record label like Rimas Entertainment whose focus is on the distribution, advertising, marketing and sale of recorded music (a/k/a "records") are closely related to those of a music publisher.  Just as a record label generates revenue in large part from exploiting the copyrights in recorded music, a music publisher generates revenue in large part from exploiting the copyrights in the underlying musical compositions (*i.e.* the words and music).  Given the close relationship between the businesses of a record label and a music publisher, it is commonplace in the music industry for a commonly owned record label and music publisher to operate under the same or very similar trademarks.  Indeed, there are dozens of examples of record companies and music publishers under common control (or otherwise affiliated or related) that offer their goods and services under the same or similar trademarks, including the three major labels – SONY MUSIC (SONY MUSIC PUBLISHING), UNIVERSAL MUSIC GROUP (UNIVERSAL MUSIC PUBLISHING GROUP) and WARNER MUSIC GROUP (WARNER CHAPPELL MUSIC).  Members of the music industry trade are therefore highly likely to believe that music publishing and record label services offered under the same (or a similar) trademark come from a common parent company, or from companies that (though separate) are related to, affiliated with or connected with each other, as that is almost always the case in practice.

25.     In May 2014, the use of the RIMAS Marks expanded from records and record label, and other related, services at Rimas Entertainment to music publishing services through RSM, which was formed at that time, just a few months after Rimas Entertainment was founded.

From the time of that formation in May 2014 until June 2023, RSM had an ownership structure identical to that of Rimas Entertainment.  During that nine-year period, the two companies shared offices, had overlapping personnel, and operated together as a practical matter. Moreover, a substantial majority of the songwriters and producers signed to RSM were also signed to Rimas Entertainment as recording artists.  As is common in the case of such closely related entities, Rimas Entertainment authorized RSM's use of the RIMAS Marks. The quality of the goods and services offered by both Rimas Entertainment and RSM was controlled by the same individuals during this period, with the quality of RSM's goods and services at all times being controlled by such individuals on Rimas Entertainment's behalf

26.     Over those nine years, both companies used the RIMAS Marks – in the case of Rimas Entertainment, in connection with records and record label, and other services, and in the case of RSM, in connection with music publishing services.  As shown below, RSM even used the same stylized version of "RIMAS", complete with a red "play" button, in connection with its services, with the word "Publishing" appearing immediately below.



27.     At all times since May 2014, Rimas Entertainment, as the senior user of the RIMAS Marks, was their exclusive owner and also owned all of their attendant goodwill.  All uses of the RIMAS Marks by RSM occurred pursuant to an implied license from Rimas Entertainment.  At no time did RSM ever acquire independent rights in the RIMAS Marks. Indeed, on August 2, 2022, several years before the events giving rise to this action occurred,

Rimas Entertainment – *not RSM* – filed an application to register the trademark RIMAS MUSIC with the PTO, App. Serial No. 97530675, for, *inter alia*, "music publishing services."  This filing by Rimas Entertainment, at a time when the company was controlled by Risamar and Jiménez, establishes that Risamar and Jiménez understood that RSM owned no independent rights in any of the RIMAS Marks for music publishing services or anything else, and that all such rights belonged exclusively to Rimas Entertainment as between the two companies.  All RSM had with respect to the RIMAS Marks was a right to use, not own, such Marks, pursuant to an implied license.

28.     On February 9, 2023, Jiménez and Risamar, along with other individuals and entities associated with them (collectively, the "Sellers"), agreed to the 2023 Transaction and executed the MIPA, in which the Sellers agreed to sell their membership interests in Rimas Entertainment to Orchard.  RSM was not part of the 2023 Transaction, and Risamar retained its prior ownership and control of RSM, upon information and belief.  All unauthorized and wrongful actions of RSM described herein have occurred at the behest of, and have been instigated by, Risamar.

29.     The RIMAS Marks were part of the 2023 Transaction, and all right, title and interest to such Marks remained with Rimas Entertainment as part of that Transaction.  The Sellers understood that the prior license granted to RSM in respect of RSM's use of the RIMAS Marks had been revoked, and that RSM's use of the RIMAS Marks had to cease post-closing.

30.     During the negotiations concerning the 2023 Transaction, representatives of Risamar and RSM approached Orchard about RSM's then-ongoing use of the RIMAS Marks, and they raised the possibility of RSM receiving an express, written license to continue such use post-closing because they knew that RSM did not have any independent right to continue using

11

the RIMAS Marks.  Orchard responded that the cost of such a license would likely be prohibitive for RSM, and no discussions concerning an express or any other license continued thereafter.

31.     Instead, on information and belief, RSM and Risamar concocted a plan to try to appropriate a portion of the rights in the RIMAS Marks that belonged exclusively to Rimas Entertainment.

32.     On April 26, 2023, after the February 9, 2023 effective date of the MIPA, but before the transaction closed on June 29, 2023, Jiménez and Risamar purported to have Rimas Entertainment enter the fraudulent Coexistence Agreement with RSM, seemingly in acknowledgement of the fact that RSM's rights to the RIMAS Marks had been revoked and any future use thereof required a new arrangement.  Orchard and Rimas Entertainment's minority owners had no knowledge of this sham Coexistence Agreement prior to the closing of the 2023 Transaction.  A copy of that Coexistence Agreement is attached as Exhibit 2.  Without Rimas Entertainment obtaining any consideration in exchange, the Coexistence Agreement purported to preclude it from ever using the RIMAS Marks in connection with music publishing services or copyright management services.  It also purported to grant RSM certain permanent rights in the RIMAS Marks so that RSM could continue to leverage the substantial goodwill and prestige of the RIMAS Marks, free of any express or implied license, and without any payment or other consideration to Rimas Entertainment.  Jiménez signed the Coexistence Agreement on behalf of Rimas Entertainment, without authority, while RSM's signatory was Carlos Souffront, Jiménez's personal attorney, on information and belief.

33.     Notwithstanding the obvious market proximity of record label services and music publishing services, the bogus Coexistence Agreement engineered by Risamar and RSM averred that there was "no likelihood of confusion" between the RIMAS Marks as used by the two

companies – a statement that was, among other things, obviously false to the extent the two companies were no longer affiliated, as was shortly to be the case.  In fact, as of the closing of the 2023 Transaction, there is no longer any connection between Rimas Entertainment and RSM; they are separate companies, separately operated, with different ownership structures, offices and employees, and Jiménez and Risamar no longer have any ongoing involvement in Rimas Entertainment's business.

34.     The execution of the sham Coexistence Agreement, with no consideration whatsoever provided to Rimas Entertainment, was a transparent giveaway of a portion of Rimas Entertainment's valuable trademark rights and therefore void *ab initio*.

35.     In addition, the execution and existence of the Coexistence Agreement were fraudulently concealed from the minority owners of Rimas Entertainment and not approved by them in any way.  As a result, the Coexistence Agreement was not authorized under Sections 5.5, 5.6 and subsections (1), (7) and (8) of Exhibit B to the then-operative Third Amended Operating Agreement of Rimas Entertainment, LLC, excerpts of which are attached as Exhibit 3.  The Coexistence Agreement was therefore void *ab initio* on this basis as well.  None of its provisions have ever taken effect or been binding on Rimas Entertainment.

36.     Without limitation, the provision of the sham Coexistence Agreement requiring the application of Puerto Rico law to the Agreement, and that any "legal suit, action or proceeding arising out of or related to this Agreement shall be instituted in a court with jurisdiction in San Juan, Puerto Rico," was specifically void *ab initio* because it was the product of a fraud perpetrated intentionally by Risamar and Jiménez.  Upon information and belief, the choice-of-law and forum-selection provision was specifically included in the sham Coexistence

Agreement by Risamar and Jiménez to dissuade any effort Rimas Entertainment might make to invalidate that fraudulent document.

37.     The execution of the sham Coexistence Agreement was also fraudulently concealed from Orchard and violative of multiple provisions of the MIPA that prohibited encumbrances of Rimas Entertainment's intellectual property, and that required its operations to be maintained in the "Ordinary Course of Business" through the closing of the 2023 Transaction. In addition, various representations made by Rimas Entertainment in the MIPA, through Risamar and Jiménez, to Orchard about Rimas Entertainment's unfettered rights to its intellectual property could not have been true at the time of closing by virtue of the execution and existence of the Coexistence Agreement and the wholly unauthorized acts of Risamar and Jiménez.

38.     With respect to the provision of the sham Coexistence Agreement specifying the application of Puerto Rico law in a Puerto Rican forum, that provision was specifically concealed from Orchard by Risamar and Jiménez, who had a duty to disclose to Orchard, following execution of the MIPA, the fact that Risamar and Jiménez intended to execute, and did execute, the Coexistence Agreement intending to transfer, for no consideration, a portion of Rimas Entertainment's valuable trademark rights to RSM.  Upon information and belief, the choice-of-law and forum-selection provision were specifically included in the sham Coexistence Agreement by Risamar and Jiménez to thwart any effort Rimas Entertainment and Orchard might make to invalidate that fraudulent document, since the MIPA was governed by New York law and required all disputes related thereto to be resolved through arbitration.

39.     Orchard and Rimas Entertainment learned of the Coexistence Agreement in late 2023 and promptly began investigating the circumstances of its execution.  At around this same time, Rimas Entertainment also learned that on May 5, 2023, just nine days after execution of the

sham Coexistence Agreement, RSM had filed two applications to register RIMAS PUBLISHING with the PTO, Serial Nos. 97922053 and 97923055, both for music publishing and copyright management services, and one in the exact same stylized logo design long used by RIMAS Entertainment, as shown below.



Upon discovering the fraudulent Coexistence Agreement and the RSM PTO applications, it became clear to Orchard and Rimas Entertainment that RSM had no intention of phasing out its use of the RIMAS Marks, or otherwise complying with Rimas Entertainment's revocation of the implied license.

40.     The filing of these applications has subsequently interfered with Rimas Entertainment's ability to register the RIMAS Marks with the PTO.  Between August 2, 2022, and April 29, 2024, Rimas Entertainment filed applications to register RIMAS and RIMAS ENTERTAINMENT with the PTO for a wide range of music-related goods and services.  Four of these Rimas Entertainment applications have been suspended in part because their filing dates occurred after those of RSM's two aforementioned applications.  In suspending these applications, the PTO stated that the earlier filed RSM applications had "an earlier filing date or effective filing date than [Rimas Entertainment's] application.  If the mark in the application(s) below registers, the USPTO may refuse registration of applicant's mark under Section 2(d) because of a likelihood of confusion with the registered mark(s). 15 U.S.C. §1052(d) . . . ."

41.     At the same time, both of RSM's applications have been suspended by the PTO, for the same reason, based on the 2022 applications filed by Rimas Entertainment for RIMAS, RIMAS MUSIC and RIMAS ENTERTAINMENT, including the RIMAS MUSIC application covering "music publishing services" referenced, *supra*, in paragraph 27.

42.     After learning of RSM's two trademark applications to register RIMAS Marks, and after completing its investigation into the execution of the sham Coexistence Agreement, Rimas Entertainment and Orchard, through counsel, promptly sent letters to Jiménez, RSM and Risamar on January 23, 2024 formalizing their position that the Coexistence Agreement is void *ab initio* and, alternatively, rescinding it.  In addition, Rimas Entertainment demanded that RSM and Risamar, *inter alia*, cease all use of the RIMAS Marks; withdraw U.S. App. Serial Nos. 97923055 and 97922053 pending with the PTO; and transfer the domain name <rimaspublishing.com> to Rimas Entertainment.

43.     Risamar and RSM have refused to comply with these demands, and while the parties have had extensive discussions with each other since early 2024, those negotiations have not succeeded in resolving the dispute.  Meanwhile, RSM has not only refused to cease using the RIMAS Marks, but its use of those Marks has instead expanded egregiously.  For example, RSM's primary website accessible at <rimaspublishing.com> prominently displays the RIMAS trademark.

44.     In addition, RSM touts that its business substantially extends beyond music publishing services, including by stating on its website that "Rimas Publishing also leads the asset licensing efforts with top international brands such as Adidas, Amazon, Univision, NBC, Corona, Cheetos, Netflix, Spotify, HBO, Rockstar Games, Comcast, AT&T, Disney, SBS, iHeart

Radio and many more."  *See* https://www.rimaspublishing.com/about-us (last visited on October 4, 2025).

45.      In March 2025, Defendants posted an announcement for RSM's planned opening of its new offices in Puerto Rico that shamelessly exploited the RIMAS Marks belonging to Rimas Entertainment by using the stylized RIMAS Mark with the red "play" button, as shown below.



As if that were not enough, the announcement referred to the "Next Chapter" of RSM's business, as if the announcement related to a Rimas Entertainment business development.

46.     On March 20, 2025, the opening of RSM's new offices generated tremendous publicity in Puerto Rico and in the Latin music community, not because of RSM's garden-variety music publishing services, but because the prominent use of the RIMAS Marks suggested to the trade and public that the event was sponsored by Rimas Entertainment.  Indeed, Rimas Entertainment received a substantial number of communications from the press, music industry participants, and even local officials in Puerto Rico asking, *inter alia*, for comments about, or why they had not been invited to, what they believed was a Rimas Entertainment event.

47.     Defendants, in common with the rest of the trade, are obviously well aware of Rimas Entertainment's RIMAS Marks, and of the goodwill represented and symbolized thereby.  Notwithstanding said awareness, and in fact by reason of the same, Defendants are knowingly perpetuating their use of the term "Rimas" and the RIMAS Marks to foster a false connection with the business with which they were once associated.  Such use has not been authorized by Rimas Entertainment and is occurring in a manner designed to confuse – and that has confused – consumers and that cannot be justified by the prior grant of an implied license that has been revoked.  Indeed, Defendants' offering of music publishing and other services under the RIMAS Marks is a flagrant violation of several of Rimas Entertainment's rights.

48.     Defendants' offering of music publishing and other services under the RIMAS Marks is intended to, and is likely to, cause confusion, mistake or deception of the trade and public and to cause them to believe that Defendants' services are authorized, sponsored or approved by Rimas Entertainment or are otherwise affiliated or connected with Rimas Entertainment and/or the RIMAS Marks when this is in fact not the case.

49.     Defendants' activities have caused and will continue to cause irreparable harm to Rimas Entertainment and to the substantial goodwill embodied in the RIMAS Marks, and said

acts will continue unless restrained by this Court.  Without limitation, the ongoing, unauthorized uses of the RIMAS Marks by RSM deprives Rimas Entertainment of its right and ability to control its reputation that is embodied in the RIMAS Marks.

50.     Rimas Entertainment has no adequate remedy at law.

## COUNT I

### Trademark Infringement, Unfair Competition and Use of False Designations of Origin Under Section 43(a)(1)(A) of the Lanham Act Against All Defendants

51.     Rimas Entertainment repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

52.     This Count arises under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)).

53.     Rimas Entertainment is the senior user of the RIMAS Marks.  The RIMAS Marks have become uniquely associated with Rimas Entertainment. The RIMAS Marks are inherently distinctive and famous in the music industry, the Latin music community, and in the State of Florida.

54.     Defendants are using the RIMAS Marks without authority to promote, sell, offer to sell, distribute or advertise their services in the entertainment and music industry in a way that is likely to cause confusion or mistake, or to deceive as to the source or origin of goods or services.

55.     As stated herein, Defendants have engaged in deceptive and/or fraudulent conduct by misleading the public as to their rights and association with the RIMAS Marks.

56.     By the acts complained of herein, Defendants intentionally engaged in conduct that constitutes false designation of origin in violation of 15 U.S.C. § 1125(a).

57.     Defendants' false designation of origin, false or misleading descriptions of fact, false or misleading representations of fact, and use of the RIMAS Marks in connection with the sale, offering for sale, distribution or advertising of services are likely to cause—and have caused—confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendants' services with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' performances, services, or commercial activities.

58.     Defendants' infringing and violative conduct has caused irreparable and immediate injury to Rimas Entertainment.

59.     Rimas Entertainment has been damaged by Defendants' unauthorized use of the RIMAS Marks.

**COUNT II**

**Common Law Trademark Infringement Under Florida Law Against All Defendants**

60.     Rimas Entertainment repeats and realleges each and every allegation set forth in Paragraphs 1 through 50 as if fully set forth herein.

61.     Rimas Entertainment is the senior user of the RIMAS Marks. Rimas Entertainment has adopted and continuously used the RIMAS Marks throughout Florida as a means of establishing goodwill and reputation and to describe, identify, or denominate the particular services offered by Rimas Entertainment and to distinguish them from similar services rendered or offered by others.

62.     Through the association with Rimas Entertainment's services, the RIMAS Marks have acquired a special significance as the name of the services rendered by Rimas Entertainment, because the RIMAS Marks have, by actual usage, acquired in Florida a

secondary, special or trade meaning as indicating, describing, identifying or denominating Rimas Entertainment as the source of entertainment and music services.

63.     Defendants have, without authorization, used the identical RIMAS Marks to promote, advertise, sell, or offer to sell music services rendered by Defendants in competition with Rimas Entertainment in the same trade area in which Rimas Entertainment has already established its name.

64.     As a consequence of Defendants' actions, customer confusion of source or as to the sponsorship and/or relationship of the Defendants' services offered by Defendants has and will continue to occur.

65.     Defendants' conduct constitutes infringement of Rimas Entertainment's RIMAS Marks under the common law of the State of Florida.

66.     Defendants' conduct has caused and will continue to cause great and irreparable harm to Rimas Entertainment, including loss of goodwill and reputation.

67.     Rimas Entertainment has suffered damages as a result of Defendants' actions.

**COUNT III**

**Common Law Unfair Competition Under Florida Law Against All Defendants**

68.     Rimas Entertainment repeats and realleges each and every allegation set forth in Paragraphs 1 through 50 as if fully set forth herein.

69.     Rimas Entertainment is the senior user of the RIMAS Marks.  The RIMAS Marks are inherently distinctive and famous in the music industry, the Latin music community, and in the State of Florida.

70.     Rimas Entertainment has adopted and continuously used the RIMAS Marks throughout Florida as a means of establishing goodwill and reputation and to describe, identify,

21

or denominate the particular services offered by Rimas Entertainment and to distinguish them from similar services rendered or offered by others.

71.     Defendants have, without authorization, intentionally engaged in deceptive and/or unfair practices by passing off, misappropriating or otherwise perpetuating the false impression of an affiliation between Rimas Entertainment and RSM that no longer exists.

72.     Defendants' actions were undertaken to trade on Rimas Entertainment's goodwill and to confuse consumers.

73.     Defendants' conduct has caused and will continue to cause great and irreparable harm to Rimas Entertainment.

74.     Rimas Entertainment has suffered damages as a result of Defendants' actions.

**COUNT IV**

**Deceptive and Unfair Trade Practices Under the
Florida Deceptive and Unfair Trade Practices Act,
Fla. Stat. § 501.201 *et seq*. Against All Defendants**

75.     Rimas Entertainment repeats and realleges each and every allegation set forth in Paragraphs 1 through 50 as if fully set forth herein.

76.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et. seq.*, prohibits unfair methods of competition, unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce.

77.     Defendants have engaged in unfair or deceptive acts or practices in trade or commerce by using the RIMAS Marks without authorization to promote, sell, offer to sell and advertise its services in the entertainment and music industry in a way that perpetuates a false impression of an affiliation between Rimas Entertainment and RSM that no longer exists.

78.     Defendants' unauthorized use of the RIMAS Marks has a tendency to mislead or deceive the public.

79.     As a direct and proximate cause of Defendants' actions, Rimas Entertainment has suffered actual damages.

80.     Pursuant to Florida Statute Section 501.2105(1), Rimas Entertainment will be entitled to recover its reasonable attorneys' fees and costs from Defendants in this action.

**COUNT V**

**<u>Trademark Dilution, Fla. Stat. § 495.151 Against All Defendants</u>**

80.     Rimas Entertainment repeats and realleges each and every allegation set forth in Paragraphs 1 through 50 as if fully set forth herein.

81.     The RIMAS Marks are famous and distinctive in the State of Florida and were famous and distinctive in the State of Florida as of January 23, 2024 when Defendants' ability to use the RIMAS Marks in connection with their business was revoked by Rimas Entertainment.

82.     Upon information and belief, Defendants have used the RIMAS Marks since January 23, 2024 with the intention of causing dilution of the RIMAS Marks and taking advantage of their famous and distinctive nature in order to benefit their music publishing business.

83.     Defendants' unauthorized and willful use of the RIMAS Marks is likely to cause dilution of the distinctive quality of the RIMAS Marks in the State of Florida and is therefore violative of Fla. Stat. § 495.151.

84.     Defendants' conduct has caused and will continue to cause great and irreparable harm to Rimas Entertainment, including depriving Rimas Entertainment of its unique identity in the RIMAS Marks.

85.     Rimas Entertainment has suffered damages as a result of Defendants' actions.

## COUNT VI

### Trademark Infringement Under the PR Trademark Act,
### P.R. Laws Ann. tit. 10, § 223w Against All Defendants

86.     Rimas Entertainment repeats and realleges each and every allegation set forth in Paragraphs 1 through 50 as if fully set forth herein.

87.     Defendants' conduct constitutes infringement of Rimas Entertainment's RIMAS Marks under P.R. Laws Ann. tit. 10, § 223w.

## COUNT VII

### False Designations of Origin and Unfair Competition Under the PR Trademark Act
### (P.R. Laws Ann. tit. 10, § 223x) Against All Defendants

88.     Rimas Entertainment repeats and realleges each and every allegation set forth in Paragraphs 1 through 50 as if fully set forth herein.

89.     Defendants' use of the RIMAS Marks constitutes false designation of origin and unfair competition, as it has caused and is likely to cause consumer confusion through the perpetuation of the false impression of an affiliation between Rimas Entertainment and RSM that no longer exists.

## COUNT VIII

### Trademark Dilution Under the PR Trademark Act,
### P.R. Laws Ann. tit. 10, sec 223y Against All Defendants

90.     Rimas Entertainment repeats and realleges each and every allegation set forth in Paragraphs 1 through 50 as if fully set forth herein.

91.     The RIMAS Marks are famous and distinctive in the Commonwealth of Puerto Rico, in that such Marks are widely recognized by the general consuming public in Puerto Rico, and were famous and distinctive in the Commonwealth of Puerto Rico as of January 23, 2024

when Defendants' ability to use the RIMAS Marks in connection with their business was revoked by Rimas Entertainment.

92.     Upon information and belief, Defendants have used the RIMAS Marks since January 23, 2024 with the intention of causing dilution of the RIMAS Marks and taking advantage of their famous and distinctive nature in order to benefit their music publishing business.

93.     Defendants' conduct constitutes dilution of Rimas Entertainment's RIMAS Marks under P.R. Laws Ann. tit. 10, § 223y.

## COUNT IX

### Damages Under the PR Civil Code, P.R. Laws Ann. tit. 31, § 10801
#### Against All Defendants

94.     Rimas Entertainment repeats and realleges each and every allegation set forth in Paragraphs 1 through 50 as if fully set forth herein.

95.     Defendants' negligent and willful conduct, as set forth above, constitutes fault and tortious behavior pursuant to Article 1536 of the PR Civil Code and has caused—and continues to cause—damages to Rimas Entertainment, including but not limited to, the latter's business reputation and goodwill, and harm to the value and goodwill associated with the RIMAS Marks.

## COUNT X

### Breach of Contract Against RSM

96.     Rimas Entertainment repeats and realleges each and every allegation set forth in Paragraphs 1 through 50 as if fully set forth herein.

97.     In or around May 2014, Rimas Entertainment granted RSM the right to use the RIMAS Marks in connection with the business of RSM through an implied trademark license.

At all relevant times, Rimas Entertainment had the right to control RSM's use of the RIMAS Marks and the quality of the goods and services offered under those RIMAS Marks.

98.     Thereafter, Rimas Entertainment fully performed its obligations as licensor.

99.     Since no later than January 23, 2024, RSM breached the obligation inherent in such license by refusing to cease use of the RIMAS Marks upon the revocation of such license by Rimas Entertainment.

100.    By reason of the foregoing, Rimas Entertainment has sustained damages resulting from such breaches in an amount to be determined at trial.

## COUNT XI

### Declaratory Judgment Under the
### U.S. Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* Against All Defendants

101.    Rimas Entertainment repeats and realleges each and every allegation set forth in Paragraphs 1 through 50 as if fully set forth herein.

102.    There is an actual and substantial controversy between the parties as to whether the sham April 26, 2023 Coexistence Agreement engineered by Defendants is valid and effective, as Defendants claim, or was either void *ab initio* or validly rescinded effective January 23, 2024, as Rimas Entertainment claims.

103.    To resolve the parties' dispute concerning the validity and enforceability of the sham Coexistence Agreement, Rimas Entertainment respectfully requests that the Court declare such Coexistence Agreement to be void *ab initio*, or, alternatively, rescinded effective January 23, 2024, under the U.S. Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*

WHEREFORE, Rimas Entertainment prays for a judgment:

1.     Permanently enjoining and restraining Defendants, their officers, agents, servants, employees, attorneys, successors or assigns, affiliates, and all persons or entities acting

in concert or participation with them or any of them, from the offering for sale, sale, advertising

and/or promotion in the United States of any music-related or other services that:

> (i)    use or depict in any way the term "Rimas," any variation thereof, or any

other designation that is confusingly similar to Rimas Entertainment's RIMAS Marks;

> (ii)    use or depict in any way any other false designation of origin or false

description or representation or any other thing calculated or likely to cause confusion or mistake

in the mind of the trade or public or to deceive the trade or public into believing that Defendants'

business or services are in any way associated or affiliated with or related to Rimas

Entertainment or Rimas Entertainment's services;

> (iii)    tend to unfairly compete with or injure Rimas Entertainment's business

and the goodwill attached thereto; and

> (iv)    use or depict in any way any designation that is likely to dilute the

distinctive quality of the RIMAS Marks within the State of Florida or the Commonwealth of

Puerto Rico.

2.    Transferring to Rimas Entertainment the <rimaspublishing.com> domain

name within thirty (30) days of entry of any judgment herein;

3.    Directing Defendants to account to Rimas Entertainment for their profits

arising from the conduct complained of herein, pursuant to 15 U.S.C. § 1117(a) and the common

laws of Florida and the statutory law of Puerto Rico.

4.    Awarding Rimas Entertainment its actual damages incurred as a

consequence of Defendants' violations of Rimas Entertainment's trademark rights as described

herein, pursuant to 15 U.S.C. § 1117(a), Florida common law, and the Puerto Rico Trademark

Act, pursuant to P.R. Laws Ann. tit. 10, §§ 223w-z, trebled as allowed by such laws on account of Defendants' intentional and willful acts.

5. Awarding Rimas Entertainment its reasonable attorneys' fees, taxable costs and disbursements of this action, pursuant to 15 U.S.C. § 1117, P.R. Laws Ann. tit 10, 28 § 223w, and the inherent authority of the Court.

6. Awarding Rimas Entertainment damages on its claim for breach of contract in an amount to be determined at trial, together with pre-judgment and post-judgment interest thereon.

7. Awarding Rimas Entertainment damages on its tort claims in an amount to be determined at trial, together with pre-judgment and post-judgment interest thereon.

8. Declaring the April 26, 2023 Coexistence Agreement executed by Rimas Entertainment LLC and RSM Publishing LLC to be void *ab initio*, or, alternatively, rescinded effective January 23, 2024.

9. Interest on all monetary amounts awarded to Rimas Entertainment as may be allowed by applicable law.

10. Awarding Rimas Entertainment such other and further relief as the Court deems just and proper.

## JURY DEMAND

Rimas Entertainment demands a trial by jury on all of its claims so triable.


Dated:      October 15, 2025

Respectfully submitted,


SHULLMAN FUGATE PLLC

*/s/ Giselle M. Girones*
Rachel E. Fugate
Florida Bar No.: 144029
rfugate@shullmanfugate.com
Giselle M. Girones
Florida Bar No.: 124373
ggirones@shullmanfugate.com
2101 Vista Parkway, Suite 4006
West Palm Beach, Florida 33411
Telephone:  (954) 329-2937

DORSEY & WHITNEY LLP
Bruce R. Ewing (*pro hac vice forthcoming*)
ewing.bruce@dorsey.com
Daniel P. Goldberger (*pro hac vice forthcoming*)
goldberger.daniel@dorsey.com
51 West 52nd Street
New York, New York 10019
Telephone: (212) 415-9200

*Attorneys for Plaintiff*
*Rimas Entertainment, LLC*